GARDEN, JUDGE:
The evidence in this claim was presented by the claimants, Eugene Lafferty and Wanda Lafferty, and their son, William Lafferty, II, and on behalf of the respondent by Bill Hanshew, its District Engineer in District 9, which included Fayette County, wherein this claim arose. Certain photographs of the claimants’ property and adjacent areas were also introduced by claimants as exhibits.
We believe the evidence established that in 1968 or 1969 the respondent completed the construction of new Route 19 which runs in a north-south direction from Oak Hill to Beckley. This new highway, in this particular area, was a four-lane interstate highway type in design. The claimants were the owners of certain real estate located immediately to the west of the new highway, and their property was located on the southwest side of a natural valley or hollow which ran in an east-west direction, both to the east and west of the new highway. In order to construct the new highway through this valley or hollow, it was necessary for the respondent to do a substantial amount of filling to accomodate the roadbed through this valley or hollow. To accomodate the natural drainage, *240 the respondent constructed an eight foot culvert in the fill. They also constructed four open concrete drains on the fill, two on the north side and two on the south side. These drains were constructed to permit the discharge of surface water from the new highway, and these surface water drains emptied into a creek in the valley or hollow.
Ingress and egress to claimants’ property was provided by a small private dirt road on the north side of their property. It ran in a westerly direction from the claimants’ property to the old Scarbro Road, but before reaching that road, it ran through an underpass in a railroad tressel, the railroad running in a north-south direction and generally parallelling the newly constructed Route 19. Immediately to the north of and running parallel with the claimants’ private road was the aforementioned creek. This creek also ran through the underpass. Apparently, an open culvert had been constructed for the creek in the underpass which was covered by railroad ties, thus permitting vehicular traffic to drive over the culvert in the underpass.
The claimants testified that prior to the construction of the new highway, the creek had very little water running in it and during the summer the creek would be dry, but after the construction of the new road, the volume of water increased tremendously, frequently overflowing after heavy rains and after the melting of a previous snow. They testified that the excess water would overflow their land depositing sand or silt on property previously used by them as a garden, making the land unusable for,-gardening purposes; that the excess water had washed out their roadbed and had washed away the railroad ties over the culvert in the railroad underpass and made the underpass unusable for the purpose of ingress or egress. During the winter months, according to claimants, their children were unable to use the underpass and were prevented from attending school. There is no question that the evidence established that the claimants and their property were damaged. The respondent, through its District Engineer, Bill Hanshew, contended that the construction of Route 19 did not cause this, overflow of water; that the claimants’ property was located at the low end of the valley or hollow and that the creek accomodated a drainage area of in excess of 50 acres. He was of the opinion that the creek was accomodating as much surface water before the construction of Route 19 as it did after the construction and that consequently the construction could not be the cause of *241 the claimants’ problems. He further testified that while he had not inspected the claimants’ property until sometime in 1970 and at the request of Commissioner Ritchie, his investigation disclosed that several years prior to the construction of Route 19, the White Oak Public Service District had constructed a 10 or 12-inch sewer line in the creekbed and through the underpass and that possibly at that time the railroad ties in the underpass had been removed or damaged.
With these contentions we disagree. A given amount of surface water following its given natural courses may not cause damage, but the same volume of water if diverted from its natural channels by artificial means, can in our opinion be turned into a destructive force, and we feel that this has occurred in this matter. We further do not feel that the construction of the sewer line caused this problem because the uncontradicted testimony of the claimants established that their problems did not begin until after the construction of the new road.
While we are disposed to make an award, the record before us fails to reveal what monetary damage the claimants sustained. Any attempt on our part to arrive at a figure would constitute speculative guessing. Claimants were not represented by counsel at the hearing and apparently were unaware of the necessity or the manner of properly proving damages to real estate, and we must reluctantly, on the basis of the record before us, disallow this claim.
However, this Court would be disposed to react favorably to a motion for rehearing filed within 30 days from the date this opinion is issued, and in accordance with Rule 15 of our Rules of Practice and Procedure. We therefore quite candidly suggest to claimants that they consider the employment of counsel so that at a later date this Court might make a proper determination of the damages sustained by the claimants.
Claim disallowed.